(March 9, 2006)

■ Lloyd Putter et al., Respondents, v City of New York, Appellant. [811 NYS2d 29]—

Order, Supreme Court, New York County (Faviola A. Soto, J.), entered August 13, 2004, which granted plaintiffs' motion for a preliminary injunction directing the New York City Planning Commission to hear, consider and vote on their land use application at its meeting scheduled for August 9, 2004, unanimously reversed, on the law, without costs, the motion denied and the preliminary injunction vacated.

Plaintiffs are three brothers who own a large parcel of land on Staten Island (the property). Since 1999, they have been working with architects to design a residential development on the property (the project). After years of planning and negotiating with city officials, plaintiffs submitted a plan to the New York City Planning Commission (the CPC). In February 2004 the CPC deemed the project ready for submission to the formal approval process.

In or about February 2004, plaintiffs learned that the Department of City Planning (DCP) had submitted an application to the CPC to establish a "Lower Density Growth Management Area" (LDGMA) in Staten Island. That application would require plaintiffs to reduce the number of units to be built on the property, and to increase the size of the units and the areas around them. The LDGMA contained a provision that development plans would be "grandfathered" if they were authorized by the CPC before LDGMA's effective date, or if the public review process thereon began before May 24, 2004.

Late in June 2004, plaintiffs learned that the public review process had not yet begun due to some deficiencies in their plans. They made the requested changes, and the plans were sent to the local Community Board, thus commencing the review process on or about July 21, 2004. On July 30, 2004, Staten Island Community Board 1 notified DCP that it opposed the project, inasmuch as the property had been mentioned as a possible site for a large public park.

On July 30, 2004, plaintiffs wrote to the CPC and noted that the City Council was planning to vote on LDGMA in early August. In order to protect the project, plaintiffs requested that the CPC review the plans at its next meeting, which was scheduled for August 9, 2004, and vote on the project at that meeting.

The CPC responded that it would not shorten the period for its review and would not vote on the application at its next meeting, but would process it in accordance with its standard

procedures. The CPC noted that, although plaintiffs had been advised that they could appear before the CPC at its June 14, 2004 public hearing to request a text amendment that would permit the project to be grandfathered, they did not do so.

Plaintiffs then commenced this action for an injunction and money damages as a result of "delay and misfeasance on the part of City officials." Plaintiffs moved by order to show cause for a preliminary injunction directing the CPC to "hear, consider and vote upon" the application at its August 9, 2004 meeting, and contended that, were that relief not granted, plaintiffs could lose their development rights, resulting in a taking of their property without due process.

The City opposed the motion contending that, under standard procedures, plaintiffs' application would have been initially reviewed at the August 23, 2004 review session, and then at a subsequent review session if necessary, and then calendared for a public hearing at which it would be voted on. Applications are not voted on at review sessions. In requesting that their application be considered for the first time at the August 9 review session and voted on at that same session, plaintiffs were seeking to "short circuit" its review. The City noted that plaintiffs seemed to think that because an application was ready to be referred to the CPC, it was also ready for a vote, which was incorrect, inasmuch as CPC frequently seeks clarification of, and modifications to, applications.

On the morning of August 9, 2004, the court granted plaintiffs' application for a preliminary injunction and directed the CPC to hear, consider and vote upon the project at its meeting that afternoon. On the same day, the City filed a notice of appeal of that order, invoking the City's statutory stay under CPLR 5519 (a). The LDGMA was enacted on August 12, 2004.

The motion court erred when it intervened by issuing the preliminary injunction since there was no reason that the application should have been heard any earlier than August 23, 2004. While the Community Board completed its review earlier than expected and the matter could have had its initial review on the court-ordered date, August 9, 2004, the court had no basis for ordering that, contrary to standard procedures, the matter be initially reviewed and voted on that same day. Even if, as plaintiffs claim and the City vehemently denies, the items to be approved in the application were trivial, the court should not have usurped the CPC's review powers, or the power to manage its own calendar, by directing it to approve or deny the application without having had the time to request clarification or modification.

"[T]he ordinary purpose of preliminary injunctive relief . . . is to maintain the status quo and to prevent any conduct which might impair the ability of the court to render final judgment" (*St. Paul Fire & Mar. Ins. Co. v York Claims Serv.*, 308 AD2d 347, 349 [2003]). Plaintiffs clearly did not seek to maintain the status quo, but rather sought the ultimate relief in their action. Indeed, plaintiffs argued that the injunction should be granted so that they would not be put through "a lengthy and expensive litigation."

Plaintiffs offer no circumstances that would have justified preliminary injunctive relief, particularly since "preliminary injunctions prevent the litigants from taking actions that they are otherwise legally entitled to take *in advance of an adjudication on the merits*, [and accordingly] should be issued cautiously and in accordance with appropriate procedural safeguards" (*Uniformed Firefighters Assn. of Greater N.Y. v City of New York*, 79 NY2d 236, 241 [1992]).

Finally, the motion court should not have granted a preliminary injunction, because plaintiffs could not have been irreparably harmed by the failure to obtain one. Regardless of whatever other actions were taken with respect to the property, any delay in the processing of the application for the project is compensable through money damages. Furthermore, even if the CPC wrongfully refused to grant plaintiffs' application, plaintiffs could have been given permission to build the development through court intervention if the court found that plaintiffs had been wrongly deprived of their right to pursue CPC approval. Therefore, the harm would not have been irreparable. Nor did plaintiffs establish a balancing of the equities in their favor, since they were unable to support their claims of bad faith on the part of government and administrative officials (*see Matter of Non-Emergency Transporters of N.Y. v Hammons*, 249 AD2d 124 [1998]; *see also St. Paul Fire & Mar. Ins. Co., supra*, 308 AD2d 347 [2003]). Concur—Buckley, P.J., Sullivan, Williams, Gonzalez and Catterson, JJ.